**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

      Plaintiff,

v.

Jesus Francisco Camacho-Porchas,

      Defendant.

No. CR-20-02616-001-TUC-JAS (LAB)

**ORDER**

On 4/16/21 the government filed a motion to reopen defendant's detention proceedings and requested an emergency hearing. (Doc. 40) On the same date the government filed an application and writ of habeas corpus. The government argues that circumstances have changed that warrant reopening the detention hearing pursuant to 18 U.S.C. § 3142(f). Specifically, it asserts that the defendant requested deportation when he appeared for his removal hearing before the immigration court. The defense argues that the government's desire to remove the defendant from the United States is not a changed circumstance that shows the defendant is a volitional flight risk. It explains that the only reason Mr. Camacho-Porchas asked to be deported was because he believed his deportation was inevitable and he was erroneously advised that he did not qualify for a bond. For the reasons stated below, the Court denies the government's Motion to Reopen the detention hearing and reinstates the conditions of release and the release order.

**FACTUAL BACKGROUND**

Mr. Camacho-Porchas was arrested on 11/23/20 (Doc. 7) after being indicted on

charges of false use of a passport, aggravated identity theft, false claim to U.S. citizenship and illegal entry. (Doc. 3) At his detention hearing on 12/15/20 the Magistrate Judge ordered the defendant released on conditions of pre-trial release, as recommended by Pre-Trial Services in the report addendum. (Docs. 15 and 16) The government requested a stay, which the Court granted, to allow the government to file an appeal to the District Judge.

The appeal was filed. (Doc. 19) A hearing was scheduled before the District Judge on 1/6/21. (Doc. 20) The government filed two supplements in support of its position for detention. (Doc. 21 and 23) The defendant filed a response. (Doc .22) The second Pre-Trial Services addendum continued to recommend release. (Doc. 26)[1] On 1/6/21, after the posting of a property bond the District Judge set conditions and ordered Mr. Camacho-Porchas released. (Doc. 32) Condition number six ordered that the defendant not travel outside the state of Arizona without prior court permission.

After Mr. Camacho-Porchas was released by the District Judge, and as anticipated, he was detained by Immigration and Customs Enforcement (ICE) and remained in their custody until this Court set a motion hearing for 4/23/21 regarding the government's motion to reopen the detention hearing.[2] The government argued that Mr. Camacho-Porchas took affirmative steps to leave the district, in violation of his conditions of release. The defendant argued that the government should elect whether it chooses a criminal prosecution or deportation but should not be able to skirt a district court's order of release by detaining a defendant in immigration custody. The defendant then only has the Hobson's choice of remaining in custody for an unknown period of time or agreeing to be deported.

The Magistrate Judge asked for additional briefing to determine exactly how the order of removal came to be. The government filed a memorandum on 5/10/21 (Doc. 49) and on 5/19/21 provided the Court with a recording of the immigration hearing, which

---

[1] The original PTS report and each of the 2 addenda state that the defendant lacks legal status in the U.S. and that ICE considers the defendant deportable.
[2] Mr. Camacho-Porchas appeared by video-teleconference, with his consent, pursuant to the CARES Act.

1   the Court reviewed. The defendant filed a response on 5/12/21. (Doc. 51) A hearing was

2   held on 5/14/21.

3           The government explained in its motion and oral argument that the immigration

4   proceedings commenced when the defendant was served with a Notice to Appear (NTA)

5   by the Department of Homeland Security (DHS).  The Notice alleged that Mr. Camacho-

6   Porchas was present in the United States without authorization. On March 19, 2021 at the

7   master calendar hearing the immigration judge explained that the defendant may be able

8   to apply for relief from removal. The defendant asked for a bond. The request was denied

9   because the judge relied on the government's notice that listed him as an arriving alien,

10  making him ineligible for a bond. Department counsel stated that she would have to

11  check to see if the defendant entered through a Port of Entry.

12           The case was continued to 4/6/21 to allow the defendant to secure counsel. Also,

13  the immigration judge advised the department's counsel that the NTA was facially

14  invalid for several reasons. She directed counsel to file a superseding NTA prior to the

15  next hearing, and to serve it on the defendant.  At the 4/6/21 hearing the judge questioned

16  the department's counsel about why a superseding NTA had not been filed. There was

17  further discussion about whether the defendant was an arriving alien. Counsel argued that

18  an I-261 was filed which could cure the defects in the NTA. The judge stated that there

19  was no conformed copy in the file. She asked the defendant if he received a copy. He did

20  not, and therefore was not served. The judge stated that since neither the court nor the

21  defendant was served the defects were not cured.

22           The defendant asked if he could be deported or if he would have to wait for the

23  next hearing. The judge advised him that he had to wait because of the government's

24  errors in the charging document. The judge again explained that the NTA lacked

25  information regarding the manner of entry. The hearing was continued to 4/15/21.

26           Mr. Camacho-Porchas was not represented by counsel at his hearings. At the final

27  hearing the defendant admitted the allegations. The judge found him removable. The

28  judge told him that he may qualify for cancellation of removal but a conviction in the

1    pending criminal case could preclude that relief. Department counsel concurred. The
2    defendant asked if an application would prolong his detention because he couldn't stand
3    being in custody much longer and just wanted to reunite with his family. He again asked
4    for and was denied a bond because as an arriving alien he did not qualify. The defendant
5    explained that if he could stay in the United States with his family that s what he would
6    prefer, but if not, he would choose removal. The judge ordered him removed. She
7    explained his appeal rights, which the defendant struggled to understand. Both the
8    government and Mr. Camacho-Porchas waived appeal.

9        The government argues that the facts above show that the defendant took
10   affirmative steps to remove himself from the United States. It claims that Mr. Camacho-
11   Porchas did not even try to apply for relief and that he could have appealed the finding
12   that he was an arriving alien, since the facts may support a finding that he was not. Were
13   he not an arriving alien the immigration judge could have set a bond.

14       The defendant responds that he would not qualify for cancellation of removal
15   based on the charges pending against him in the instant case and the dozens of times he
16   previously used a fraudulent U.S. passport to enter the United States. The defendant
17   should not be required to submit a futile application. Also, without an attorney the
18   defendant had no way to know that he could qualify for a bond, especially when the
19   immigration judge and the attorneys for DHS incorrectly determined he was an arriving
20   alien at all three hearings.

21   **DISCUSSION**

22       The government's argument to reopen the detention hearing is that the government
23   – the same Executive Branch, albeit a different agency – will remove the defendant from
24   the United States if he is not detained pending his criminal trial, and the government is
25   without power to stop the removal process that it initiated while the criminal case is
26   pending. This same argument has been made by the government and rejected by many
27   courts around the country. This Court also rejects the argument that the defendant is a
28   flight risk under the Bail Reform Act solely because the government initiated removal

proceedings and will remove him from the United States while the criminal case is pending. The Court reaches this conclusion regardless of whether the defendant understood the immigration court proceedings when he ultimately agreed to deportation from the United States rather than remain in immigration custody for an indeterminate length of time.[3]

In *U.S. v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015), the Ninth Circuit made clear what many other Circuits and Districts throughout the country have determined, that the possibility of a criminal defendant's removal from the United States is not, in and of itself, a basis to detain the defendant under the Bail Reform Act (BRA). The Ninth Circuit noted that Congress chose not to exclude removable aliens from consideration for release in criminal proceedings. *Santos-Flores*, 794 F.3d at 1090. Rather, 18 U.S.C. § 3142(d) provides that when a court determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence and that defendant may flee or pose a danger, the court shall order temporary detention for not more than ten days and direct the government "to notify 'the appropriate official of the Immigration and Naturalization Service.' 18 U.S.C. § 3142(d). A determination that the alien may flee or pose a danger – voluntary acts – is required to impose even this temporary detention." *Santos-Flores*, 794 F.3d at 1091. If immigration authorities do not take custody of the defendant during this ten-day period, Congress directs the court to treat the defendant in accordance with other provisions in the Bail Reform Act, "notwithstanding the applicability of other provisions." *Id*. (*quoting* 18 U.S.C. § 3142(d)).

In *Santos-Flores* the court reasoned that "[r]einstatement of a prior order of removal is neither automatic nor obligatory." 794 F.3d at 1091. Immigration officials may decide to forego reinstatement for a variety of reasons, including the exercise of

---

[3] This issue has been litigated and decided in this district in *U.S. v. Leon*-Cruz, CR 19-0307-TUC-JAS(EJM). The Court held that even where a defendant agreed to voluntary departure upon the mistaken belief that his deportation was inevitable, his actions were not volitional and did not make him a flight risk. This Court relies on the reasoning in *Leon-Cruz*.

prosecutorial discretion. *Id*. The "government may also exercise its judgment that the public interest in criminally prosecuting an alien outweighs the interest in swiftly removing him." *Id*. However, if the government makes the choice to deliver the alien to the U.S. Attorney's Office for prosecution instead of removing him immediately, "the government may not use its discretionary power of removal to trump a defendant's right to an individualized bail determination under the Bail Reform Act." *Id*.

As the court in *Santos-Flores* explained, several district courts have persuasively explained that the "risk of nonappearance" referred to in 18 U.S.C. § 3142 must involve an element of volition. *Id*. These district courts reconciled the tension that has emerged in the application of the Bail Reform Act and Immigration and Nationality Act ( INA) by two separate departments within the Executive Branch, the U.S. Department of Justice and the U.S. Department of Homeland Security. That tension is the Executive Branch's desire to both remove the alien defendant from the United States under the INA, and then prevent that removal by having the defendant detained pending trial under the Bail Reform Act because the defendant presents a "risk of flight."

In *U.S. v. Trujillo-Alvarez*, 900 F.Supp. 2d 1167, 1178-79 (D. Or. 2012), a case cited and relied upon in *Santos-Flores*, the district court made clear that when there is a criminal prosecution pending, the Bail Reform Act takes precedence over the Immigration and Nationality Act. The court reached this conclusion for two reasons. First, under the INA when an alien is subject to a removal order, "the Executive Branch 'shall remove the alien from the United States within a period of 90 days.'". *Trujillo-Alvarez*, 900 F.Supp. 2d at 1174 (*citing* 8 U.S.C. § 1231(a)(1)(A)). That removal period only begins to run on the latest of: (1) the date the order of removal becomes administratively final, (2) if the removal order is judicially reviewed and if a court orders a stay of removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. *Id*. (*citing* 8 U.S.C. § 1231(a)(1)(B)). The court reasoned that, under subsection (3), the 90-day removal period had not yet commenced because "a

1   person who has been released subject to conditions of pretrial supervision is still
2   'confined' because they are subject to restraints not shared by the public generally that
3   significantly confine and restrict their freedom." *Id*. At 1175. The court concluded that
4   "there is no legal requirement, or even any practical necessity, that ICE detain [the
5   defendant] in order to remove and deport him before the pending criminal proceedings
6   can be concluded." *Id*.

7        Second, the court found that two regulations issued under the authority of the INA
8   demonstrated the Executive Branch's determination that criminal prosecutions should
9   take priority over removal and deportation. *Id*. At 1178-79. The first regulation provides
10  that "[n]o alien shall depart, or attempt to depart, from the United States if his departure
11  would be prejudicial to the interests of the United States under the provisions of § 215.3."
12  *Id*. at 1178 (*quoting* 8 C.F.R. § 215.2(a)). The second regulation says that the departure of
13  any alien shall be "deemed prejudicial to the interests of the United States" if, among
14  other reasons, the alien is a party to "any criminal case." *Id*. At 1179 (*quoting* 8 C.F.R. §
15  215(g)). The court reasoned that these INA regulations evidence that when a criminal
16  case is pending against a defendant alien, the criminal proceeding takes precedence over
17  the alien's removal, and these regulations are "fully consistent with the statutory
18  provisions of the INA." *Id*.

19       The court further found, like the Ninth Circuit in *Santos-Flores*, that in the Bail
20  Reform act "Congress explained how to reconcile the release and detention provisions of
21  that statute with the administrative deportation provisions of the INA." *Id*. If a court
22  determines that a criminal defendant has no legal status to be in the United States and
23  may flee, the court may temporarily detain the defendant for up to ten days to allow
24  immigration authorities to take custody of the defendant and commence removal
25  proceedings. *Id*. (*citing* 18 U.S.C. § 3142). If the immigration authorities decline to take
26  custody of the defendant then the court treats the alien defendant like any other defendant
27  under the Bail Reform Act, without regard to the applicability of other provisions of law
28  governing release pending trial or deportation or exclusion proceedings. *Id*. Thus, if

Congress wanted to bar aliens with immigration detainers from eligibility for release under the Bail Reform Act, it could have done so, but it did not. *Id.*

The court explained that the Executive Branch had a choice to make, and it had two options: remove the defendant from the United States or face dismissal of the criminal charges:

> If the Executive Branch chooses not to release the Defendant and instead decides to abandon criminal prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that.  If, however, the Defendant is not released pending trial as directed by the Magistrate Judge pursuant to the BRA, the pending criminal prosecution of the Defendant may not go forward.  To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the Bail Reform Act and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively.

*Id.* at 1170. The court concluded that there is not a third option because "[w]hat neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." *Id.* at 1179.

Before the Ninth Circuit decided *Santos-Flores*, many other district courts had similarly concluded that the likelihood that a criminal defendant will be removed from the United States while the criminal case is pending is not a sufficient reason for detention under the Bail Reform Act.   These district courts generally reason, like the court did in Trujillo-Alvarez, that: (1) the 90-day removal period under the INA has not started because a defendant is still "confined" while subject to pretrial release conditions, and (2) the regulations issued under the INA, which show that the criminal proceeding takes precedence over removal proceedings, allow the Executive Branch to obtain a departure-control order or otherwise stay the removal order while the criminal case is pending.[4]   Indeed, in *Castro-Inzunza* (an unpublished decision relied upon in *Trujillo-*

---

[4]  See *U.S. v. Stepanyan*, 2015 WL 4498572 (N.D. Cal. 2015) ("The government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departure control order," and the court "sees no reason under § 215.3(g) why it could not.");  *U.S. v. Valdez-Lara*, 2015 WL 1456530 (N.D. Ohio 2015) (The regulations issued

1     *Alvarez*) the Ninth Circuit likewise concluded that the 90-day removal period under the

2     INA had not started because a defendant was still "confined" while subject to pretrial

3     release conditions, and that the government had failed to show that "it lacks the ability to

4     stay or defer the defendant's removal through a stay or departure control order if it

5     believes that his removal before trial would be contrary to the public interest."  2012 WL

6     6622075 * 1.

7          At least one district court has found that the focus on the regulations issued under

8     the INA "is 'not [on] deportation or removal cases,' but rather on 'aliens seeking to

9     depart the United States voluntarily.'" *United States v. Marinez-Patino*, 2011 WL

10     902466, * 6 (N.D. Ill. 2011) ("[W]hile Section 215.3(j) authorizes a departure-control

11     order for aliens 'where doubt exists whether such alien[s] [are] departing voluntarily from

12     the United States' it specifically excludes 'alien[s] who [are] departing . . . subject to an

13     order issued in … deportation proceedings.'" (quoting 8 C.F.R. § 2l5.3(j)).

14     Nevertheless, this court found that these regulations represent a "determination that,

15     when a party to a pending criminal case exits the country without the prosecuting

16     authority's consent, his absence is prejudicial to the interests of the United States."

17     *Marinez-Patino*, 2011 WL 902466 at *7.  As such, the court rejected the proposition that

18     if a defendant were released on bond under the Bail Reform Act, immigration authorities

19     "would act in a way that can only be described as irrational" given that the defendant's

20     prosecution is the result of the coordination between two Executive Branch agencies.  *Id*.

21          The problem in the present case, as in all of the cases discussed above, "is not that

22

23     under the INA "have outlined a priority for prosecution over removal.  A conclusion that

24     is consistent with the interpretation that removal periods do not begin until release from
detention or confinement has been completed."); *U.S. v. Blas*, 2013 WL 5317228 (S.D.

25     Ala. 2013) (Court agrees with *Trujillo-Alvarez* that 90-day removal period has not started
since a person on pretrial release is still "confined" for purpose of that removal provision

26     of the INA, and the regulations issued under the INA, which demonstrate a determination
that a criminal case takes precedence over removal and deportation, are consistent with

27     this statutory provision); *U.S. v. Sanchez-Martinez*, 2013 WL 3662871 (D. Col. 2013)
(The INA "seems to permit the Secretary [of the Department of Homeland Security]

28     some discretion in determining when deportation will occur following reinstatement of
the removal order" and the prosecution has not indicated whether it has attempted to
obtain a departure-control order pursuant to the regulations issued under the INA).

[the] defendant will absent himself from the jurisdiction, but that two Article II [Executive Branch] agencies will not coordinate their respective efforts." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180 (quoting *Barrera-Omana*, 638 F. Supp. 2d. 1108, 1111-12 (D. Minn. 2009)).  The Executive Branch, through the U.S. Attorney's Office, wants to prosecute the defendant, and the same Executive Branch, through the Department of Homeland Security, wants to deport him.  It is not this court's role "to resolve Executive Branch turf battles.   The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis.  The Court ought not run interference for the prosecuting arm of the government."  Id.

Simply stated, the government should not be able to have it both ways – initiate removal proceedings and then claim that the outcome of those proceedings makes the defendant a voluntary flight risk under the Bail Reform Act, simply because the government wants the decision on his immigration status to precede the decision of his guilt on the criminal charges.  Here, the Executive Branch has made the choice to obtain an Order of Removal against the defendant, and that is its right.   However, "[w]hat neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA."  *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179.  This Court cannot and will not "run interference for the prosecuting arm of the government" based on the choice the Executive Branch makes in this case.  *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180 (quoting *Barrera-Omana*, 638 F. Supp. 2d. 1108, 1111-12 (D. Minn. 2009)).

In the present case, notwithstanding the District Judge's Order that the defendant be released from custody pending his trial, the Executive Branch chose to detain the defendant in immigration custody, proceed with the defendant's removal proceeding, and obtain an Order of Removal.  The fact that the defendant, in the government's view, did not sufficiently contest his removal from the United States is irrelevant to the analysis of whether the defendant should now be detained pending trial under the Bail Reform Act.  The government is aware that even if the defendant had more vigorously fought his

removal, he would have remained in immigration custody even though he was ordered released pending trial under the Bail Reform Act.

That outcome is even more egregious in this case where the government's counsel in the immigration proceedings appears to have erroneously advised the judge that the defendant is an arriving alien and thus does not qualify for a bond. The setting and posting of a bond would have allowed the defendant to be released from immigration custody so he could address the criminal case while the removal proceedings remained pending. It was the government's obligation, not the defendant's (who had no counsel), to let the immigration court know that the defendant was ordered released from custody pending trial on the criminal charges.  Rather than doing so, the government chose to ignore the release order, detain the defendant, and proceed with the removal proceedings.

As a result of this choice, the Executive Branch can remove the defendant immediately and perhaps end the criminal prosecution.  However, the Executive Branch still has several options to prevent the defendant's removal from the United States while the criminal case is pending.  First, as the Ninth Circuit noted in *Castro-Inzunza* as well as the district court in *Trujillo-Alvarez*, the Executive Branch need not execute the order of removal within 90 days because he would still be "confined" by virtue of being subject to pretrial release conditions.  Second, as also discussed in those cases and in the many other district court cases discussed earlier, the government could stay or delay the execution of a removal order until the criminal case is resolved. Third, the government could parole the defendant into the United States while the criminal charges are pending. Thus, the defendant need not be immediately removed from the United States even though an Order of Removal has been obtained.[5]

---

[5] This Court is aware that, practically speaking, the U.S. Attorney's Office has no control over the administrative proceedings.  Nevertheless, these two Executive Branch agencies are often called upon to coordinate their efforts on a criminal prosecution of a removable alien.  And they are obliged to do so because, as discussed in text above, the Bail Reform Act takes precedence over the INA.  Indeed, this coordination is done daily in the District of Arizona.  For instance, the Department of Homeland Security often notifies the U.S. Attorney's Office of a removable alien in their custody who appears to meet criminal prosecution guidelines.  Also, the U.S. Attorney's Office can and sometimes does include language in plea agreements that requires a defendant to stipulate to his removal under the INA.  More importantly, this coordination between these two Executive Branch

For the reasons discussed above, it is clear that through coordinated efforts the Executive Branch can comply with both the Bail Reform Act and the provisions of the INA governing removal of an alien while a criminal case is pending.  Accordingly, the Motion to Reopen the Detention Hearing is denied, and the defendant is to be released from custody pursuant to the conditions imposed by the District Judge on January 6, 2021.  (Doc. 28)

DATED this 24th day of May, 2021.

Honorable Leslie A. Bowman
United States Magistrate Judge

---

agencies has already been done in this case. The government easily secured the defendant's presence at the hearing on the Motion to Reopen the Detention hearing. Presumably, that was because DHS immediately notified the Assistant U.S. Attorney of the Removal Order and the plan to remove the defendant.